# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

R4 TRANSPORTATION AND LOGISTICS, LLC,
a Florida limited liability company, and E2 LOGISTICS
LLC, a Florida limited liability,

Plaintiffs,

CASE NO.:

-against-

J.A.G. EXPRESS CORPORATION, a Florida
corporation, AMERICAN GROWING BUSINESS CORP.,
a Florida corporation, PABLO DAMIAN GOROSITO, an
individual, JOSE ALBERTO GOROSITO, an individual,
JULIAN GOROSITO, an individual, DIEGO ALEJANDRO
AVALOS, an individual, EDUARDO ANIBAL LOPEZ, an
individual, BARBARA STRATOS, an individual,
THALLES GOMES JOSE DOS SANTOS, an individual.

Defendants.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, R4 TRANSPORTATION AND LOGISTICS LLC ("R4") and E2 LOGISTICS LLC ("E2") (collectively, "Plaintiffs"), sues defendants J.A.G. EXPRESS CORPORATION ("JAG"), AMERICAN GROWING BUSINESS CORP. ("AGB"), Pablo Damian Gorosito ("Pablo Gorosito"), Jose Alberto Gorosito ("Jose Gorosito"), Julian Gorosito ("Julian Gorosito"), Diego Alejandro Avalos ("Diego Avalos"), Eduardo Anibal Lopez ("Eduardo Lopez"), Barbara Stratos ("Barbara Stratos") and Thalles Gomes Jose Dos Santos ("Thalles Gomes") (collectively, "Defendants") and allege as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiff R4 TRANSPORTATION AND LOGISTICS LLC is a limited liability company organized under the laws of the State of Florida.  R4 invested US$356,000.00 in the fraudulent scheme perpetrated by Defendants as set forth below.

2.      Plaintiff E2 LOGISTICS LLC is a limited liability company organized under the laws of the State of Florida.  E2 invested US$90,000.00 in the fraudulent scheme perpetrated by Defendants as set forth below.

3.      Defendant J.A.G. EXPRESS CORPORATION is a for profit corporation organized under the laws of the State of Florida.

4.      Defendant AMERICAN GROWING BUSINESS CORP. is a for profit corporation organized under the laws of the State of Florida.

5.      Defendant Pablo Damian Gorosito is an individual residing in Argentina and who is otherwise *sui juris*.   This Court has personal jurisdiction over Pablo Gorosito because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

6.      Defendant Jose Alberto Gorosito is an individual residing in Argentina and who is otherwise *sui juris*.  This Court has personal jurisdiction over Jose Gorosito because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

7.      Defendant Julian Gorosito is an individual residing in Argentina and who is otherwise *sui juris*.   This Court has personal jurisdiction over Julian Gorosito because he: (a)

operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

8.      Defendant Diego Alejandro Avalos is an individual residing in Argentina and who is otherwise *sui juris*.   This Court has personal jurisdiction over Diego Avalos because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

9.      Defendant Eduardo Anibal Lopez is an individual residing within this judicial district and who is otherwise *sui juris*.   This Court has personal jurisdiction over Eduardo Lopez because he: (a) resides within this judicial district, (b) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (c) committed tortious acts within this state; and (d) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

10.      Defendant Barbara Stratos is an individual residing within this judicial district and who is otherwise *sui juris*.   This Court has personal jurisdiction over Barbara Stratos because she: (a) resides within this judicial district, (b) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (c) committed tortious acts within this state; and (d) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

11.      Defendant Thalles Gomes Jose Dos Santos is an individual residing in Argentina and who is otherwise *sui juris*.   This Court has personal jurisdiction over Thalles Gomes because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state

3

and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

12.     This Court possesses subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a).

13.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     In perpetrating their fraudulent scheme, Defendants and their co-conspirators[1] have violated United States and Florida law.  In connection with the acts and course of conduct alleged in this Complaint, Defendants directly and indirectly used means and instrumentalities of interstate and foreign commerce, including the United States mail and wires, interstate telephone, the United States Federal Reserve, and the national and international banking systems to commit mail, wire and banking fraud as well as money laundering in violation of U.S. law.

15.     In addition, a significant and meaningful part of the scheme, including planning and executing the scheme, occurred in Florida and Defendants repeatedly committed violations of state and federal law, *i.e.*, "predicate acts," in Florida to perpetuate and to conceal the unlawful scheme.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22 because each Defendant is an entity or person that is found or transacts business in this district, including but not limited to from 10598 NW South River Drive, Medley, Florida 33178 and 10451

---

[1] Besides getting assistance from legal counsel and financial institutions to perpetrate their fraud, Defendants also setup other legal entities both domestic and offshore, including but not limited to, Southern Logistics One, LLC; American Growing Business S.A.; and Southern Desarrollos S.A.

NW 117th Avenue, Suite 125, Medley, FL 33178, and a substantial portion of the challenged conduct, trade and commerce described herein has been carried out in this district, including meetings between Defendants and their co-conspirators.

### FACTUAL BACKGROUND

17.     Beginning in or about 2013 through present, Defendants have been running a multi-million-dollar fraudulent scheme.  Defendants solicit funds exclusively from foreign investors to invest in their purported logistics operation.  Defendants promised investors that if they contribute capital, Defendants will use that capital to buy used trucks that they will put to work and manage to generate extraordinarily high annual returns in excess of 35% of the capital invested.[2]  Defendants promise to hire truck drivers and use their infrastructure of inhouse mechanics and large logistics contracts to keep the trucks working at all times in order to generate the promised returns.  Defendants lure their victims by falsely promising that their investment will qualify them to apply for permanent residence under the EB-5 program or non-immigrant E-2 investors visas.  Defendants pitch the United States logistics market as a great safe investment by selling to investors that as the world's largest consumer market, there is a high demand for logistics providers to move goods by land throughout the United States.[3]  Defendants sell to investors that buying trucks that are usually 4 years old provide the optimum financial performance given their depreciated value, yet their still several years of useful life.

18.     In actuality, after receiving their victims' funds, Defendants either do not buy any trucks or if they buy trucks, they acquire them for a fraction of the price represented to the investor

---

[2] *See* **Exhibit A**, a spreadsheet of operational expenses and returns by "Southern Logistics" one of the earlier iterations of companies used in the fraudulent scheme.

[3] *See* **Exhibit B**, excerpt of printed marketing materials by "American Growing Business" one of iterations of companies used in the fraudulent scheme.

(*i.e.*, $20,000 instead of the $80,000 to $90,000 range represented). When Defendants do buy trucks, they are in such bad mechanical condition that they are not suitable to work, much less implement the investment strategy pitched to the investors. More importantly, Defendants do not employ any in-house mechanics and they do not have any logistics contracts that would allow these trucks to be constantly on the road delivering loads of goods throughout the United States.

19.     In the end, Defendants misappropriate the overwhelming majority of their victims' funds and they use these funds to fund their personal lifestyles and to further promote their unlawful scheme. Defendants never put any trucks to work and their victims, like Plaintiffs here, never see a single penny in return for their investment. To add insult to injury, when Defendants are caught in their fraudulent scheme they attempt to intimidate and further victimize their victims by threatening them with legal action to remove the inoperable trucks from their yard in Medley, Florida.

20.     Defendants lure their victims through various means, including direct solicitations by Pablo, Jose and Julian Gorosito, Diego Avalos, Eduardo Lopez and Thalles Gomes, internet advertising, sales meetings, and through a pyramid marketing scheme enlisting the aid of a promoters who were paid commissions in the range of 15% of the capital raised. Julian Gorosito and Diego Avalos are the masterminds of the whole scheme. Julian's sons, Pablo and Jose run the day-to-day operations of the fraudulent scheme with the aid of straw men and women that serve as fronts in the sham entities they create to further the fraud. Eduardo Lopez and Barbara Stratos serve as managers in most of the entities setup in Florida to further the fraud. Thalles Gomes, a Brazilian national, is in charge of soliciting investors from Brazil whereas the Gorositos and Diego Avalos target Spanish-speaking investors from Latin America and Spain, mostly hailing from their native Argentina.

6

21.     Defendants maintain an office in the posh neighborhood of Puerto Madero in Buenos Aires, Argentina.  Most of the fraudsters worked out of this office, but they regularly travel to South Florida in furtherance of the fraud.  Defendants also maintain an office located at 10451 NW 117th Avenue, Suite 125, Medley, FL 33179 (formerly located at 10598 NW South River Drive, Medley, FL 33179) where they keep some office staff to convey an air of legitimacy.  In order to perpetrate their fraud, Defendants enlisted the help of financial institutions operating within this judicial district, including Wells Fargo Bank, N.A. ("Wells Fargo") and Branch Banking and Trust Company ("BB&T Bank").

22.     Defendants opened bank accounts with Wells Fargo and BB&T Bank in order to receive their victims' funds and to divert those funds for their personal use instead of for the purposes of implementing the investment strategy pitched to Plaintiffs.  Defendants' conduct evidences a pattern of mail fraud, wire fraud, bank fraud, money laundering, and monetary transactions involving property derived from unlawful activity.

23.     The Defendants induced the Plaintiffs to invest in their fraudulent scheme through a series of misrepresentations that were made in meetings and teleconferences attended by Plaintiffs' representatives and some of the defendants.

24.     R4 has four (4) principals, Rubens and Hortencia Rabelo (husband and wife), and their two (2) daughters: Luana and Lorena Rabelo.   Luana is a childhood friend of Defendant Thalles Gomes.  Defendant Thalles Gomes abused his close friendship and relationship of trust with Luana to initially pitch the investment to the rest of the Rabelos.  The principals of E2 are Lorena Rabelo and her husband Petrus Paulo.

25.     In or about March 2016, Thalles Gomes approached Luana in São Paulo Brazil, about the investment opportunity and ask her to have her family invest.    Thalles Gomes

7

misrepresented to Luana that his father had purchased him a truck that was already working and producing great returns on the purported principal invested.

26.     Defendant Thalles Gomes arranged a meeting that was held on July 6, 2016, at the office of Defendant's fraudulent scheme located at 10451 NW 117th Avenue, Suite 115, Medley, Florida 33178.  The meeting was attended by Plaintiffs' representatives: Rubens and Luana Rabelo and Luana's husband, Dino Bandiera.  The meeting was also attended by Defendant Barbara Stratos, and two (2) other women that appeared to be working for the fraudulent scheme as covers to give some air of legitimacy.  At this meeting, Barbara Stratos purportedly show the truck that belonged to Thalles Gomes and misrepresented that principals running the purported business had forty (40) trucks of their own and two hundred and eighty (280) from third-party investors.  At this meeting, Defendant Barbara Stratos showed documents to Plaintiffs' representatives showing a return of principal amount invested of 35% annually.  All of the representations made by Barbara Stratos were false and she knew they were false when she made them.  Moreover, all the documents Barbara Stratos showed during the meeting were false as none of the investors have gotten returns that get even close to the 35% per year promised return.

27.     Defendant Thalles Gomes arranged for an additional meeting that took place at the restaurant of the Fasano Hotel, in Punta del Este, Uruguay, and was held on October 31, 2016. The meeting was attended by Plaintiffs' representatives: Rubens, Hortencia, Luana and Lorena Rabelo as well as Dino Bandiera and Petrus Paulo.  The meeting was also attended by Defendants Thalles Gomes and Eduardo Lopez.  A picture of the lunch meeting showing all of the participants is attached hereto as **Exhibit C**.  At this meeting, Eduardo Lopez and Defendant Thalles made a series of misrepresentations including: (i) that the logistic operations had a fleet of approximately 400 trucks and they had a goal of reaching a fleet of 1,000 trucks; (ii) that Eduardo Lopez had

8

himself four (4) trucks; (iii) that Defendant Thalles Gomes had one truck; (iii) that each truck produces a return of 30% on the capital invested to put each truck to work; (iv) that the investment in the trucks was extremely secure, the logistics business was ran by serious business entities with many years of experience in the logistics market in the United States.  During this meeting, Defendant Thalles Gomes and Eduardo Lopez showed Plaintiffs' representatives excel spreadsheets showing the purported returns and projected profit and loss statements, marketing materials, showing the website link www.americangb.com.  All of the representations made were false and Defendants Thalles Gomes and Eduardo Lopez knew they were false when they were made.  All of the written materials presented to Plaintiffs' representatives were also false and fraudulent.

28.     During the Punta del Este meeting, Defendants Thalles Gomes and Eduardo Lopez solicited that R4 purchase four (4) trucks at the price of $89,000 each for total investment of $356,000 and that E2 purchase one (1) truck at the price of $90,000.  Defendants Thalles Gomes and Eduardo Lopez committed to organize the Florida limited liability companies R4 and E2 and to open R4's and E2's bank accounts.  Notably, BB&T, which appears to be an active member of the RICO enterprise, agreed to open the bank accounts for R4 and E2 even though none of Plaintiffs' representatives visited the branch of the bank to open the bank accounts.

29.     In January 2017, Defendant Thalles Gomes travelled from Buenos Aires, Argentina, to São Paulo, Brazil, in furtherance of his efforts to induce the Plaintiffs to invest. Defendant Thalles Gomes met with Rubens, Hortencia and Luana Rabelo.  At this meeting, Defendant Thalles Gomes made the repeated misrepresentations that he himself had invested by having his father buy him a truck that was producing great returns, that the investment was secure and with no risk, that the companies running the business had been in business for over ten (10)

years, and many other misrepresentations of material facts.  All of Defendant Thalles Gomes'
representations were false and he knew they were false when he made them.

30.     In February-March 2017, R4 and E2, induced by the fraudulent representations
made by the Defendants, proceeded to make their investments (R4 in the amount of $356,000 and
E2 in the amount of $90,000).

31.     Plaintiffs never received a single penny in return of their $446,000 investment.
Plaintiffs became suspicious that they have been duped by Defendants.  As a result, Plaintiffs
coordinated a Skype teleconference to be held on July 12, 2017, with Eduardo Lopez, Thalles
Gomes, and Pablo Gorosito.  Plaintiffs' representatives Rubens and Luana Rabelo, Petrus Paulo,
and Dino Bandiera decided to actually travel to Buenos Aires, Argentina and showed up
unexpectedly the Defendants' office there instead of attending the meeting via Skype as originally
setup.  This meeting lasted for about 3 hours, and during that meeting, Defendants Thalles Gomes,
Pablo Gorosito and Eduardo Lopez made additional misrepresentations to cover up their
fraudulent scheme including: (i) the purported returns on the investments of the performance of
Plaintiffs' trucks; (ii) the purported operational costs of Plaintiffs' trucks; (iii) the number of
employees of Defendants' entities; (iv) operational costs of Defendants' structure;   Plaintiffs
representatives secretly recorded the three (3) hour conversation in compliance with Argentine law.

## CAUSES OF ACTION

### COUNT I – RICO (Violation of 18 U.S.C. § 1962(c))
### (Against All Defendants)

32.     Plaintiffs incorporates paragraphs 1 through 31 above by reference.

33.     Plaintiffs and each defendant and co-conspirator is a "person" within the meaning
of 18 U.S.C. § 1961(3) and 1962(a) and (c).

34.     Defendants and their co-conspirators comprised a group of persons associated together for the common purpose of carrying out the conspiracy described in this complaint.  This conspiracy principally involved the soliciting and misappropriation of Plaintiffs' funds.  Defendants and their co-conspirators thus constitute an association-in-fact enterprise under 18 U.S.C. §§ 1961(4) and 1962(a) and (c).

35.     During all relevant times, Defendants and their co-conspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth herein.  These acts constitute a violation of one or more of 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity).

36.     Defendants engaged in, and whose activities affect, interstate commerce.  At all relevant times, Defendants were employed by or associated with the enterprise described above.

37.     Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally diverting, laundering and converting hundreds of thousands of dollars belonging to Plaintiffs.

38.     Pursuant to and in furtherance of the illegal scheme, Defendants knowingly agreed to perform acts, and did perform multiple related acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity all of which facilitated the activities and conduct of those operating and managing the enterprise in an illegal manner.

39.     The acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

40.     Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

41.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs were injured in its business and property through the loss of US$446,000.00.

**WHEREFORE**, Plaintiffs requests a judgment against Defendants awarding treble damages of US$1,338,000.00, plus interest, costs and attorneys' fees, and for such further relief as the Court deems just and proper.

## COUNT II – RICO (Violation of 18 U.S.C. § 1962(d))
### (Against All Defendants)

42.     Plaintiffs incorporates paragraphs 1 through 31 above by reference.

43.     Plaintiffs and each defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(a) and (c).

44.     Defendants and their co-conspirators comprised a group of persons associated together for the common purpose of carrying out the conspiracy described in this complaint.  This conspiracy principally involved the soliciting and misappropriation of Plaintiffs' funds.  Defendants and their co-conspirators thus constitute an association-in-fact enterprise under 18 U.S.C. §§ 1961(4) and 1962(a) and (c).

45.     During all relevant times, Defendants and their co-conspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth

herein.  These acts constitute a violation of one or more of 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity).

46.    Defendants engaged in, and whose activities affect, interstate commerce.  At all times relevant, Defendants were employed by or associated with the enterprise described above.

47.    Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally diverting, laundering and converting hundreds of thousands of dollars belonging to Plaintiffs.

48.    Pursuant to and in furtherance of the illegal scheme, Defendants knowingly agreed to perform acts, and did perform multiple related acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity all of which facilitated the activities and conduct of those operating and managing the enterprise in an illegal manner.

49.    The acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity, set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

50.    Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

51.     As a direct and proximate result of Defendants racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs were injured in its business and property through the loss of more than US$38.7 million.

52.     As set forth above, each of the Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

53.     Specifically, each of the Defendants conspired to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally diverting, laundering and converting hundreds of thousands of dollars belonging to Plaintiffs.

54.     Each Defendant knew that its predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above and to enrich itself.

55.     That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

56.     As a direct and proximate result of Defendants' conspiracy with the members of the enterprise, the overt acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs were injured in its business and property through the loss of US$446,000.00.

**WHEREFORE**, Plaintiffs requests a judgment against Defendants awarding treble damages of US$1,338,000.00, plus interest, costs and attorneys' fees, and for such further relief as the Court deems just and proper.

## COUNT III − FLORIDA RICO (Violation of §772.103, Fla. Stat.)
### (Against All Defendants)

57.     Plaintiffs incorporates paragraphs 1 through 31 above by reference.

58.     For the reasons set forth above, Defendants have violated the Florida Civil Remedies for Criminal Practices Act, §772.103(1), (3)-(4), Fla. Stat., which is Florida's state law version of the RICO Act, and which tracks the RICO Act virtually verbatim.

59.     Specifically, as described in detailed above, Defendants and their co-conspirators have, since 2013, comprised a group of persons associated together for the common purpose of carrying out the conspiracy described in this complaint to defraud their victims, including Plaintiffs, by soliciting their funds based on false pretenses and by using those funds to fund their lifestyles and to further promote their fraudulent scheme to attract additional victims.   Each of the Defendants and their co-conspirators participated in this conspiratorial conduct through a pattern of racketeering activity including violations of one or more of 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity).

60.     As a direct and proximate result of Defendants' conspiracy with the members of the enterprise, the overt acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs were injured in its business and property through the loss of US$446,000.00.

**WHEREFORE**, Plaintiffs requests a judgment against Defendants awarding treble damages of US$1,338,000.00, plus interest, costs and attorneys' fees, and for such further relief as the Court deems just and proper.

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.

### COUNT IV - FRAUD
### (Against Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito)

61.     Plaintiffs incorporates paragraphs 1 through 31 above by reference.

62.     Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito made numerous misrepresentations of fact as set forth in paragraphs 23-31.

63.     Plaintiffs reasonably and justifiably relied upon the representations of Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito in connection with their decision to invest $446,000.00.

64.     Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito representations to Plaintiffs were false and were known to be false by him when made because he had the specific intent and purpose to cause Plaintiffs to invest in their fraudulent logistics business so that he could misappropriate Plaintiffs' funds for his sole benefit to the detriment of Plaintiffs.

65.     Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito representations to Plaintiffs were made with the positive intent of deceiving Plaintiffs and/or were made without any intention of ever performing by using Plaintiff's funds to fund his lifestyle instead of carrying on the logistics business pitched to Plaintiffs.

66.     As a result of the above-described fraud, Plaintiffs have suffered and sustained damages in the amount of at least $446,000.00.

67.     Plaintiffs reserve the right to bring a claim for punitive damages upon a proper showing to the Court.

**WHEREFORE**, Plaintiffs request a judgment against Defendants Barbara Stratos, Eduardo Lopez, Thalles Gomes and Pablo Gorosito for an award of money damages, including pre and post judgment interest; and for such further relief as the Court deems just and proper.

## COUNT V - CONSPIRACY TO DEFRAUD
### (Against All Defendants)

68.     Plaintiffs incorporates paragraphs 1 through 31 above by reference.

69.     Each of the Defendants engaged in a civil conspiracy to defraud Plaintiffs.

70.     The fraudulent conspiracy included an agreement to commit several unlawful acts, including agreements to engage in mail, wire and bank fraud, money laundering, and engaging in monetary transactions involving property derived from specified unlawful activity, primarily through the use of Wells Fargo and BB&T's bank accounts.

71.     Defendants engaged in numerous overt acts through mail, wire and bank fraud, money laundering, and monetary transactions involving property derived from specified unlawful activity which allowed them to launder hundreds of thousands of dollars diverted from Plaintiffs.

72.     As a direct and proximate result of the conspiracy, Plaintiffs have been damaged.

73.     The wrongful acts of Defendants in this regard were done with malice and with the intent to defraud.

74.     Plaintiffs reserve the right to bring a claim for punitive damages upon a proper showing to the Court.

**WHEREFORE**, Plaintiffs request a judgment against Defendants for an award of money damages, including pre and post judgment interest; and for such further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs request a jury trial on any and all counts for which a trial by jury is permitted by law.

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.

Dated:  May 17, 2018.                    Respectfully submitted,

                                         LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
                                         777 W. 41 Street, Suite 402
                                         Miami Beach, Florida 33140
                                         E-mail: rodrigo@rdasilvalaw.com
                                         Telephone:     (305) 615-1434
                                         Facsimile:     (305) 615-1435

                                         By: _/s/ Rodrigo S. Da Silva_____
                                             Rodrigo S. Da Silva, Esq.
                                             Florida Bar No. 0088600
                                             *Counsel for Plaintiffs, R4 Transportation and Logistics,*
                                             *LLC and E2 Logistics LLC*

18

# EXHIBIT A

# FLUJO DE FONDOS / FLOTA LOGÍSTICA PROPIA

Flujo anual tomando como datos indicadores promedio del ejercicio 2015. Todos los valores están expresados en dólares.


SOUTHERN LOGISTICS

| VARIABLES CLAVE | Unidades: 3 | Millas x Unidad x Mes: 10,000 | Valor Carga x Milla: 1.5 | Valor Chofer x Milla: 0.45 | Valor Combustible x Milla: 0.46 |
|---|---|---|---|---|---|

### FLUJO ANUAL (meses 1–12) y PROYECCIÓN A 8 AÑOS

| | Inv. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | P1 | P2 | P3 | P4 | P5 | P6 | P7 | P8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MILLAS PROMEDIO | | 8,500 | 8,500 | 10,000 | 10,500 | 10,500 | 10,500 | 10,000 | 10,000 | 10,500 | 10,500 | 10,500 | 10,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| MILLAS TOTALES RECORRIDAS | | 8,925 | 8,925 | 10,500 | 11,025 | 11,025 | 11,025 | 10,500 | 10,500 | 11,025 | 11,025 | 11,025 | 10,500 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 |
| **INGRESOS** | | | | | | | | | | | | | | | | | | | | | |
| Por cargas | | 38,250 | 38,250 | 45,000 | 47,250 | 47,250 | 47,250 | 45,000 | 45,000 | 47,250 | 47,250 | 47,250 | 45,000 | 540,000 | 540,000 | 540,000 | 540,000 | 540,000 | 540,000 | 540,000 | 540,000 |
| **EGRESOS** | | | | | | | | | | | | | | | | | | | | | |
| Instrumentación Southern | -30,000 | | | | | | | | | | | | | | | | | | | | |
| Inspección pre-compra | | | | | | | | | | | | | | | | | | | | | |
| Tractor 2009 (*) | -120,000 | | | | | | | | | | | | | | | | | | | | |
| Acondicionamiento tractor | -3,500 | | | | | | | | | | | | | | | | | | | | |
| Depósito seguro tractor | -7,500 | | | | | | | | | | | | | | | | | | | | |
| Patente tractor | -4,800 | | | | | | | | | | | | | | | | | | | | |
| Traslado tractor | | | | | | | | | | | | | | | | | | | | | |
| Trailer 53 pies cerrado (*) | -21,000 | | | | | | | | | | | | | | | | | | | | |
| Acondicionamiento trailer | | | | | | | | | | | | | | | | | | | | | |
| Patente trailer | -1,200 | | | | | | | | | | | | | | | | | | | | |
| Transferencias 7.34 % | -10,863 | | | | | | | | | | | | | | | | | | | | |
| Representación comercial | | | | | | | | | | | | | | | | | | | | | |
| **Total Inversión inicial** | **-198,863** | | | | | | | | | | | | | | | | | | | | |
| Choferes | | 12,049 | 12,049 | 14,175 | 14,884 | 14,884 | 14,884 | 14,175 | 14,175 | 14,884 | 14,884 | 14,884 | 14,175 | 170,100 | 170,100 | 170,100 | 170,100 | 170,100 | 170,100 | 170,100 | 170,100 |
| Combustible | | 12,317 | 12,317 | 14,490 | 15,215 | 15,215 | 15,215 | 14,490 | 14,490 | 15,215 | 15,215 | 15,215 | 14,490 | 173,880 | 173,880 | 173,880 | 173,880 | 173,880 | 173,880 | 173,880 | 173,880 |
| Dispatcher 5% de la carga | | 1,913 | 1,913 | 2,250 | 2,363 | 2,363 | 2,363 | 2,250 | 2,250 | 2,363 | 2,363 | 2,363 | 2,250 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 |
| Factoring 2,5% | | 956 | 956 | 1,125 | 1,181 | 1,181 | 1,181 | 1,125 | 1,125 | 1,181 | 1,181 | 1,181 | 1,125 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 |
| Mantenimiento mecánico | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 |
| Rastreo satelital | | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 |
| Alquiler predio operaciones | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Seguros camiones y cargas | | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 46,800 | 46,800 | 46,800 | 46,800 | 46,800 | 46,800 | 46,800 | 46,800 |
| Fisical damage | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Patentes | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 |
| Presentación de taxes | | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 480 | 480 | 480 | 480 | 480 | 480 | 480 | 480 |
| Taxes combustibles (IFTA) | | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 |
| **Total Egresos** | **-198,863** | 33,869 | 33,869 | 38,675 | 40,277 | 40,277 | 40,277 | 38,675 | 38,675 | 40,277 | 40,277 | 40,277 | 38,675 | 464,100 | 468,900 | 468,900 | 468,900 | 468,900 | 468,900 | 468,900 | 468,900 |
| **RESULTADO OPERATIVO** | **-198,863** | 4,381 | 4,381 | 6,325 | 6,973 | 6,973 | 6,973 | 6,325 | 6,325 | 6,973 | 6,973 | 6,973 | 6,325 | 75,900 | 71,100 | 71,100 | 71,100 | 71,100 | 71,100 | 71,100 | 71,100 |
| Canon Southern 30% | | 1,314 | 1,314 | 1,898 | 2,092 | 2,092 | 2,092 | 1,898 | 1,898 | 2,092 | 2,092 | 2,092 | 1,898 | 22,770 | 21,330 | 21,330 | 21,330 | 21,330 | 21,330 | 21,330 | 21,330 |
| Rendimiento Neto | | 3,067 | 3,067 | 4,428 | 4,881 | 4,881 | 4,881 | 4,428 | 4,428 | 4,881 | 4,881 | 4,881 | 4,428 | 53,130 | 49,770 | 49,770 | 49,770 | 49,770 | 49,770 | 49,770 | 49,770 |
| **RETORNO ACUMULADO** | | 3,067 | 6,133 | 10,561 | 15,442 | 20,323 | 25,204 | 29,632 | 34,059 | 38,940 | 43,821 | 48,703 | 53,130 | 53,130 | 102,900 | 152,670 | 202,440 | 252,210 | 301,980 | 351,750 | 401,520 |
| **RECUPERO DE INVERSIÓN** | **-198,863** | -195,797 | -192,730 | -188,302 | -183,421 | -178,540 | -173,659 | -169,232 | -164,804 | -159,923 | -155,042 | -150,161 | -145,733 | -145,733 | -95,963 | -46,193 | 3,577 | 53,347 | 103,117 | 152,887 | 202,657 |

**RETORNO SOBRE INVERSIÓN PROYECTADO   ANUAL: 26.72%**

(*) Los valores de las unidades tractoras y los tráilers tienen una validez de 45 días corridos y pueden sufrir alteraciones según la oferta y demanda del mercado.

## FLUJO DE FONDOS / FLOTA LOGÍSTICA PROPIA

Flujo anual tomando como datos indicadores promedio del ejercicio 2015. Todos los valores están expresados en dólares.


SOUTHERN LOGISTICS

| VARIABLES CLAVE | Unidades: 4 | Millas x Unidad x Mes: | 10,000 | Valor Carga x Milla: 1.67 | Valor Chofer x Milla: 0.45 | Valor Combustible x Milla: 0.46 |
|---|---|---|---|---|---|---|

| | Inicial | FLUJO ANUAL 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | PROYECCIÓN A 8 AÑOS 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MILLAS PROMEDIO | | 8,500 | 8,500 | 10,000 | 10,500 | 10,500 | 10,500 | 10,000 | 10,000 | 10,500 | 10,500 | 10,500 | 10,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| MILLAS TOTALES RECORRIDAS | | 8,925 | 8,925 | 10,500 | 11,025 | 11,025 | 11,025 | 10,500 | 10,500 | 11,025 | 11,025 | 11,025 | 10,500 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 | 126,000 |
| **INGRESOS** | | | | | | | | | | | | | | | | | | | | | |
| Por cargas | | 56,780 | 56,780 | 66,800 | 70,140 | 70,140 | 70,140 | 66,800 | 66,800 | 70,140 | 70,140 | 70,140 | 66,800 | 801,600 | 801,600 | 801,600 | 801,600 | 801,600 | 801,600 | 801,600 | 801,600 |
| **EGRESOS** | | | | | | | | | | | | | | | | | | | | | |
| Instrumentación Southern | -60,000 | | | | | | | | | | | | | | | | | | | | |
| Inspección pre-compra | -8,000 | | | | | | | | | | | | | | | | | | | | |
| Tractor 2007 a 2009 (*) | -180,000 | | | | | | | | | | | | | | | | | | | | |
| Acondicionamiento tractor | -8,000 | | | | | | | | | | | | | | | | | | | | |
| Depósito seguro tractor | -10,000 | | | | | | | | | | | | | | | | | | | | |
| Patente tractor | -6,400 | | | | | | | | | | | | | | | | | | | | |
| Traslado tractor | -8,000 | | | | | | | | | | | | | | | | | | | | |
| Trailer 53 pies cerrado (*) | -48,000 | | | | | | | | | | | | | | | | | | | | |
| Acondicionamiento trailer | -12,000 | | | | | | | | | | | | | | | | | | | | |
| Patente trailer | -1,600 | | | | | | | | | | | | | | | | | | | | |
| Transferencias | -800 | | | | | | | | | | | | | | | | | | | | |
| Representación comercial | -13,712 | | | | | | | | | | | | | | | | | | | | |
| **Total Inversión inicial** | -356,512 | | | | | | | | | | | | | | | | | | | | |
| Chofers | | 16,065 | 16,065 | 18,900 | 19,845 | 19,845 | 19,845 | 18,900 | 18,900 | 19,845 | 19,845 | 19,845 | 18,900 | 226,800 | 226,800 | 226,800 | 226,800 | 226,800 | 226,800 | 226,800 | 226,800 |
| Combustible | | 16,422 | 16,422 | 19,320 | 20,286 | 20,286 | 20,286 | 19,320 | 19,320 | 20,286 | 20,286 | 20,286 | 19,320 | 231,840 | 231,840 | 231,840 | 231,840 | 231,840 | 231,840 | 231,840 | 231,840 |
| Dispatcher 5% de la carga | | 2,839 | 2,839 | 3,340 | 3,507 | 3,507 | 3,507 | 3,340 | 3,340 | 3,507 | 3,507 | 3,507 | 3,340 | 40,080 | 40,080 | 40,080 | 40,080 | 40,080 | 40,080 | 40,080 | 40,080 |
| Factoring 2,5% | | 1,420 | 1,420 | 1,670 | 1,754 | 1,754 | 1,754 | 1,670 | 1,670 | 1,754 | 1,754 | 1,754 | 1,670 | 20,040 | 20,040 | 20,040 | 20,040 | 20,040 | 20,040 | 20,040 | 20,040 |
| Mantenimiento mecánico | | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 52,800 | 52,800 | 52,800 | 52,800 | 52,800 | 52,800 | 52,800 | 52,800 |
| Rastreo satelital | | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 |
| Alquiler predio operaciones | | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 2,880 | 2,880 | 2,880 | 2,880 | 2,880 | 2,880 | 2,880 | 2,880 |
| Seguros camiones y cargas | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 |
| Seguros de daños físicos, camiones y trailers | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Patentes | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,400 | 6,400 | 6,400 | 6,400 | 6,400 | 6,400 | 6,400 |
| Presentación de taxes | | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 |
| Taxes combustibles (IFTA) | | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 840 | 840 | 840 | 840 | 840 | 840 | 840 | 840 |
| **Total Egresos** | -356,512 | 47,156 | 47,156 | 53,640 | 55,802 | 55,802 | 55,802 | 53,640 | 53,640 | 55,802 | 55,802 | 55,802 | 53,640 | 643,680 | 650,080 | 650,080 | 650,080 | 650,080 | 650,080 | 650,080 | 650,080 |
| **RESULTADO OPERATIVO** | -356,512 | 9,625 | 9,625 | 13,160 | 14,339 | 14,339 | 14,339 | 13,160 | 13,160 | 14,339 | 14,339 | 14,339 | 13,160 | 157,920 | 151,520 | 151,520 | 151,520 | 151,520 | 151,520 | 151,520 | 151,520 |
| Canon Southern 20% | | 1,925 | 1,925 | 2,632 | 2,868 | 2,868 | 2,868 | 2,632 | 2,632 | 2,868 | 2,868 | 2,868 | 2,632 | 31,584 | 30,304 | 30,304 | 30,304 | 30,304 | 30,304 | 30,304 | 30,304 |
| Rendimiento Neto | | 7,700 | 7,700 | 10,528 | 11,471 | 11,471 | 11,471 | 10,528 | 10,528 | 11,471 | 11,471 | 11,471 | 10,528 | 126,336 | 121,216 | 121,216 | 121,216 | 121,216 | 121,216 | 121,216 | 121,216 |
| RETORNO ACUMULADO | | 7,700 | 15,399 | 25,927 | 37,398 | 48,869 | 60,340 | 70,868 | 81,396 | 92,866 | 104,337 | 115,808 | 126,336 | 126,336 | 247,552 | 368,768 | 489,984 | 611,200 | 732,416 | 853,632 | 974,848 |
| RECUPERO DE INVERSIÓN | -356,512 | -348,812 | -341,113 | -330,585 | -319,114 | -307,643 | -296,172 | -285,644 | -275,116 | -263,646 | -252,175 | -240,704 | -230,176 | -230,176 | -108,960 | 12,256 | 133,472 | 254,688 | 375,904 | 497,120 | 618,336 |

RETORNO SOBRE INVERSIÓN PROYECTADO    **ANUAL: 35.44%**

(*) Los valores de las unidades tractoras y los tráilers tienen una validez de 45 días corridos y pueden sufrir alteraciones según la oferta y demanda del mercado.

# EXHIBIT B



Conozca las diferentes opciones de negocio para alcanzar el éxito

## American
## Growing Business

*Nos dedicamos a invertir en el mercado de Estados Unidos y Latinoamerica desarrollando nuevas y novedosas oportunidades de negocios para nuestros clientes. Ayudándolo a alcanzar sus metas con una gestión basada en la seguridad, confianza y transparencia.*

02



Quienes conformamos el equipo de American Growing Bussines.
Acompañamos el crecimiento sostenido en el área de transporte y
bienes raíces, generando modelos de inversión de alta rentabilidad
versus bajo riesgo y guiando a nuestros inversores a tomar la mejor
decisión.

# Nuestro Equipo, el mejor capital



*Nuestros Diferenciales*

*Know-How*
*Compromiso*
*Transparencia*
*Relaciones Duraderas*

04

*Distintas Propuestas para distintos Perfiles*

# FLOTA PROPIA
# LOGÍSTICA
# POOL DE INVERSIÓN
# VILLA SAN MATÍAS
# QUANTUM

American Growing Business



QUANTUM

06

# 5 Razones
## para Invertir en EEUU



Entorno Económico

Estabilidad de Mercado
y Seguridad Jurídica

Beneficios Fiscales



País de las
Oportunidades

Imagen Empresarial
Internacional

08

# LOGÍSTICA EN USA

## American Growing Business Corp.

"Una empresa de logística terrestre en uno de los mercados más consumistas del mundo"

Desde e año 2013 nos abrimos al mercado para que con dos modalidades de inversión distintas puedas ser parte de este negocio, recibiendo rentabilidades y resultados que se proyectan en el orden del 12/35% anual ofrecemos el más sólido know how del negocio y la estabilidad económica, legal y jurídica de los EE.UU.

Podés ser parte de un pool de inversiones o ser dueño de tu propia flota de camiones.

American Growing Business



# Pool de Inversión

Modalidad diseñada para pequeños y medianos inversores que comienzan su camino en el negocio.

Implica la posibilidad de ser partícipe de una empresa 100% operativa en USA dueña de camiones, administrada por profesionales altamente tecnificados en logística con una rentabilidad anual durante 4 años fija y asegurada del 12% sobre capital de inversión y devolución final del aporte.



American Growing Business

# Flota Propia

Se trata de ser dueño de su propia llc y flota de camiones en USA, para lo cual American GB pone a disposición del inversor todo su equipo de trabajo y conocimiento administrando y operando sus unidades por un mínimo de 5 años renovable a tasa del 35% anual. Teniendo además en esta segunda opción la posibilidad de optar por una visa E2 de inversionista.





Alicia Moreau de Justo 1780 1o G., CABA
Buenos Aires, Argentina. Tel. +54 (11) 5235 3518

10598 NW South River Drive Medley
FL 33178, Miami, USA. Tel. +1 (786) 245 5295

www.americangb.com | info@americangb.com

EXHIBIT C

