# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

R4 TRANSPORTATION AND LOGISTICS, LLC,
a Florida limited liability company, and E2 LOGISTICS
LLC, a Florida limited liability,

                             Plaintiffs,

                 -against-

J.A.G. EXPRESS CORPORATION, *et al.*

                 Defendants.

_____/

CASE NO.: 18-CV-21977-RNS

## PLAINTIFFS' EXPEDITED[1] MOTION FOR LEAVE TO FILE *FIRST* AMENDED COMPLAINT

Plaintiffs R4 Transportation and Logistics, LLC and E2 Logistics, LLC (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 15, respectfully move Court for leave to file their *First* Amended Complaint. In support thereof, Plaintiffs state as follows:

1. Amendments to pleadings are generally governed by Rule 15 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15. Except when an amendment is pleaded "as a matter of course," as defined by the rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The "purpose of the [r]ule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *See Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982) (emphasis added); C. Wright & A. Miller, Federal Practice & Procedure, s. 1471, at 359

---

[1] Plaintiffs need an expedited adjudication of this motion because Plaintiffs' deadline to file a Notice of Appeal of this Court's Order dismissing this action with prejudice expires on March 4, 2022. Once a Notice of Appeal is filed, this Court will be divested of jurisdiction to entertain this Motion.

(1971).  Moreover, courts should "**should freely give leave when justice so requires**."  Fed. R. Civ. P. 15(a)(2) (emphasis added).

2.  Given this purpose, refusing leave to amend **is <u>only justified upon a showing</u> of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment**.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).  Whether to grant leave to amend pursuant to Rule 15(a) is within the court's wide discretion.  *Id.*  However, the "**outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules**."  *Id.* (emphasis added).  "The policy of the federal rules is to permit liberal amendment **<u>to facilitate determination of claims on the merits</u>** and to prevent litigation from becoming a technical exercise in the fine points of pleading."  *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  In addition, in ruling on a motion for leave to amend, it is appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation.  *See Zenith Radio v. Hazeltine Research*, 401 U.S. 321, 329 (1971).

3.  Furthermore, **it is an abuse of discretion** to not grant leave to a plaintiff to file his **<u>first</u>** amended complaint.  *See Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990) (holding that district court abused its discretion in not allowing the filing of a first amended complaint which sought to cure standing deficiencies).  The Eleventh Circiut has stressed that "**unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial**."  *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (emphasis added) (citations omitted).  In addition, it is an abuse of discretion to deny leave to amend without stating a reason for such denial.

*Forman,* 371 U.S. at 182; *see also Monarch Indus. Corp. v. Am. Motorists Ins. Co.*, 276 F. Supp. 972, 981 (S.D.N.Y. 1967) (same).

4. Plaintiffs are fully aware of the tremendous pressures that the federal judiciary is under to promptly bring legal proceedings to a prompt resolution. However, just as justice delayed is justice denied, justice rushed is justice buried. While Plaintiffs filed this action on May 17, 2018, it took many months and in some cases years to serve many of the defendants who reside outside of the United States. Because international service of process is complex, the Federal Rules of Civil Procedure **<u>do not provide a time limit for a Plaintiff to effect service of process</u>**. Fed. R. Civ. P. 4(m). Notwithstanding this unlimited time to effect service of process abroad, Plaintiffs decided to voluntarily dismiss the only unserved defendant named in the original complaint, Pablo Damian Gorosito [ECF No. 47], because Plaintiffs understood that the Court was eager to bring the matter to a final resolution.

5. Moreover, it is important to note that Plaintiffs promptly moved to seek a clerk's default of the defendants that were served and failed to answer the original complaint and the Court *sua sponte* stayed the case while Plaintiffs could have pursued final judgments against the defaulted defendants.

6. On January 27, 2022, this Court entered an Order [ECF No. 75] denying Plaintiff's second motion for entry of final default judgment against defendants Diego Alejandro Avalos and Thalles Gomes Dos Santos (the "<u>Motion for Default Judgment</u>").[2] In addition to denying the Motion for Default Judgment, the Court dismissed Plaintiffs' original Complaint by raising a series

---

[2] The Motion for Default Judgment was intended to seek a default judgment against all defaulted defendants by through a scrivener's error the other defaulted defendants Barbara Stratos, J.A.G. Express Corp., Julian Gorosito and American Growing Business Corp. were unintentionally omitted.

of legal deficiencies to Plaintiffs' Complaint without giving an opportunity to brief the issues and also closing Plaintiffs' the doors to the courthouse by not granting leave to amend for Plaintiffs to file their *first* Amended Complaint.

7.      The Court's reason for denying leave to amend is not based on the grounds set out by the Supreme Court or by the body of law concerning the liberal policy of amendments to pleadings, but rather on violation of this Court's orders, all of which were explained to the Court in prior filings.[3]  As noted in the original complaint and now in the First Amended Complaint attached hereto as **Exhibit A**, the Plaintiffs were the victims of a vicious fraud under which they lost close to half a million dollars.

8.      All of the served defendants defaulted, and they are likely to default again by failing to answer a First Amended Complaint if this Court grants leave to amend.  There is no prejudice to the Defendants by granting leave to amend, while Plaintiffs' would suffer a tremendous prejudice if this Court does not grant leave to amend.  Plaintiffs respectfully submit that they have cured all of the alleged legal deficiencies in their new iteration of the Complaint attached hereto as **Exhibit A**.

      **WHEREFORE**, Plaintiffs, R4 Transportation and Logistics, LLC and E2 Logistics, LLC, respectfully request that the Court enter an Order: (1) granting this Motion; (2) granting leave to Plaintiffs to file their First Amended Complaint attached hereto as **Exhibit A**; and (3) granting any such further relief as the Court deems just and proper.

---

[3] It is important to note that this Court never entered a Rule 16 Scheduling Order and accordingly never violated any such order.  Moreover, Plaintiffs' failure to comply with the Court's imposed deadlines were because of the miscalendaring of the a deadline, a scrivener's error, or the unfortunately deterioration of the health of the associate attorney that was handling this action and had to leave employment with the firm as a result of said health issues.

Dated: March 3, 2022

Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Rd., Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone:     (305) 615-1434
Facsimile:      (305) 615-1435

By:     /s/ *Rodrigo S. Da Silva*
        Rodrigo S. Da Silva, Esq.
        *Counsel for Plaintiffs, R4 Transportation and*
        *Logistics, LLC and E2 Logistics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing was served on this date on all counsel or parties of record on the Service List below.

/s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva, Esq.

## SERVICE LIST

Julian Gorosito
10451 NW 117 Avenue, Suite 125, Medley, FL  33178

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

R4 TRANSPORTATION AND LOGISTICS, LLC,
a Florida limited liability company, and E2 LOGISTICS
LLC, a Florida limited liability,

Plaintiffs,

CASE NO.: 18-cv-21977-RNS

-against-

J.A.G. EXPRESS CORPORATION, a Florida
corporation, AMERICAN GROWING BUSINESS CORP.,
a Florida corporation, JOSE ALBERTO GOROSITO, an
individual,JULIAN GOROSITO, an individual, DIEGO
ALEJANDRO AVALOS, an individual, EDUARDO
ANIBAL LOPEZ, an individual, BARBARA STRATOS, an
individual, and THALLES GOMES JOSE DOS SANTOS.

Defendants.
_____/

## FIRST AMENDED COMPLAINT FOR DAMAGES AND
## DEMAND FOR JURY TRIAL

Plaintiffs, R4 TRANSPORTATION AND LOGISTICS LLC ("R4") and E2 LOGISTICS LLC ("E2") (collectively, "Plaintiffs"), sues defendants J.A.G. EXPRESS CORPORATION ("JAG"), AMERICAN GROWING BUSINESS CORP. ("AGB"), Jose Alberto Gorosito ("Jose"), Julian Gorosito ("Julian"), Diego Alejandro Avalos ("Diego"), Eduardo Anibal Lopez ("Eduardo"), Barbara Stratos ("Barbara") and Thalles Gomes Jose Dos Santos ("Thalles") (collectively, "Defendants") and allege as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff R4 TRANSPORTATION AND LOGISTICS LLC is a limited liability company organized under the laws of the State of Florida.  R4 invested US$356,000.00 in the fraudulent scheme perpetrated by Defendants as set forth below.

2.      Plaintiff E2 LOGISTICS LLC is a limited liability company organized under the laws of the State of Florida.  E2 invested US$90,000.00 in the fraudulent scheme perpetrated by Defendants as set forth below.

3.      Defendant J.A.G. EXPRESS CORPORATION is a for profit corporation organized under the laws of the State of Florida.

4.      Defendant AMERICAN GROWING BUSINESS CORP. is a for profit corporation organized under the laws of the State of Florida.

5.      Defendant Jose Alberto Gorosito is an individual residing in Argentina and who is otherwise *sui juris*.  This Court has personal jurisdiction over Jose Gorosito because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

6.      Defendant Julian Gorosito is an individual residing in Argentina and who is otherwise *sui juris*.   This Court has personal jurisdiction over Julian Gorosito because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

7.      Defendant Diego Alejandro Avalos is an individual residing in Argentina and who is otherwise *sui juris*.   This Court has personal jurisdiction over Diego Avalos because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

8.      Defendant Eduardo Anibal Lopez is an individual residing within this judicial district and who is otherwise *sui juris*.   This Court has personal jurisdiction over Eduardo Lopez because he: (a) resides within this judicial district, (b) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (c) committed tortious acts within this state; and (d) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

9.      Defendant Barbara Stratos is an individual residing within this judicial district and who is otherwise *sui juris*.   This Court has personal jurisdiction over Barbara Stratos because she: (a) resides within this judicial district, (b) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (c) committed tortious acts within this state; and (d) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

10.      Defendant Thalles Gomes Jose Dos Santos is an individual residing in Brazil and who is otherwise *sui juris*.   This Court has personal jurisdiction over Thalles Gomes because he: (a) operated, conducted, engaged in, or carried on a business or business venture in this state and had an office in this state at all times relevant hereto; (b) committed tortious acts within this state; and (c) acted as a Miami, Florida-based co-conspirator in the scheme described in this Complaint.

11.      This Court possesses subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a).

12.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     In perpetrating their fraudulent scheme, Defendants and their co-conspirators[1] have violated United States and Florida law.  In connection with the acts and course of conduct alleged in this Amended Complaint, Defendants directly and indirectly used means and instrumentalities of interstate and foreign commerce, including the United States mail and wires, interstate telephone, the United States Federal Reserve, and the national and international banking systems to commit mail, wire and banking fraud as well as money laundering in violation of U.S. law.

14.     In addition, a significant and meaningful part of the scheme, including planning and executing the scheme, occurred in Florida and Defendants repeatedly committed violations of state and federal law, *i.e.*, "predicate acts," in Florida to perpetuate and to conceal the unlawful scheme.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22 because each Defendant is an entity or person that is found or transacts business in this district, including but not limited to from 10598 NW South River Drive, Medley, Florida 33178 and 10451 NW 117th Avenue, Suite 125, Medley, FL 33178, and a substantial portion of the challenged conduct, trade and commerce described herein has been carried out in this district, including meetings between Defendants and their co-conspirators.

## **FACTUAL BACKGROUND**

16.     Beginning in or about 2013 through 2020, Defendants ran a multi-million-dollar fraudulent scheme in this federal judicial district and abroad.  Defendants solicit funds exclusively

---

[1] Besides getting assistance from legal counsel and financial institutions to perpetrate their fraud, Defendants also setup other legal entities both domestic and offshore, including but not limited to, Southern Logistics One, LLC; American Growing Business S.A.; and Southern Desarrollos S.A.

4

from foreign investors to invest in their purported logistics operation. Defendants promised investors that if they contribute capital, Defendants will use that capital to buy used trucks that they will put to work and manage to generate extraordinarily high annual returns in excess of 35% of the capital invested.[2] Defendants promised to hire truck drivers and use their infrastructure of inhouse mechanics and large logistics contracts to keep the trucks working at all times in order to generate the promised returns. Defendants lure their victims by falsely promising that their investment will qualify them to apply for permanent residence under the EB-5 program or non-immigrant E-2 investors visas. Defendants pitched that the United States logistics market as a great safe investment by selling to investors that as the world's largest consumer market, there is a high demand for logistics providers to move goods by land throughout the United States.[3] Defendants represent to investors that buying trucks that are usually 4 years old provide the optimum financial performance given their depreciated value, yet their still several years of useful life.

17. In actuality, after receiving their victims' funds, Defendants either do not buy any trucks or if they buy trucks, they acquire them for a fraction of the price represented to the investor (*i.e.*, $20,000 instead of the $80,000 to $90,000 purchase price represented). When Defendants do buy trucks, they are in such bad mechanical condition that they are not suitable to work, much less implement the investment strategy pitched to the investors. More importantly, Defendants do not employ any in-house mechanics and they do not have any logistics contracts that would allow these trucks to be constantly on the road delivering loads of goods throughout the United States.

---

[2] *See* **Exhibit A**, a spreadsheet of operational expenses and returns by "Southern Logistics" one of the earlier iterations of companies used in the fraudulent scheme.

[3] *See* **Exhibit B**, excerpt of printed marketing materials by "American Growing Business" one of iterations of companies used in the fraudulent scheme.

18.    In fact, the trucks that Defendants purchased from Plaintiff were inoperable and moreover they were never even registered with the Florida Department of Motor Vehicles which it obviously prevented them from being put to work as promised by Defendants.  Plaintiffs' representatives made physical inspection of the office and yards where Defendants purportedly ran their business, and they never found any employees or mechanics other than clerical staff such as Barbara to create the paperwork to keep obtaining victims for the fraudulent scheme.

19.    In the end, Defendants misappropriate the overwhelming majority of their victims' funds and they use these funds to fund their personal lifestyles and to further promote their unlawful scheme.  Moreover, in this case, the Defendants misappropriated the trucks they purchased for Plaintiffs by forging the signatures of Plaintiffs' representatives to transfer the certificates of title to the trucks to a third party, CJJ&J Trucking LLC, a Florida limited liability company.  Defendants never put any trucks to work and their victims, like Plaintiffs here, never see a single penny in return for their investment.  To add insult to injury, when Defendants are caught in their fraudulent scheme they attempt to intimidate and further victimize their victims by threatening them with legal action to remove the inoperable trucks from their yard in Medley, Florida.

20.    Defendants lure their victims through various means, including direct solicitations by Pablo, Jose, Julian, Diego, Eduardo and Thalles, internet advertising, sales meetings, and through a pyramid marketing scheme enlisting the aid of a promoters such as business brokers who were paid commissions in the range of 15% of the capital raised.  Julian and Diego are the masterminds of the whole scheme.  Julian's sons, Pablo and Jose run the day-to-day operations of the fraudulent scheme with the aid of straw men and women that serve as fronts in the sham entities they create to further the fraud.  Eduardo  and Barbara  serve as managers in most of the entities setup in Florida to further the fraud.  Thalles, a Brazilian national, is in charge of soliciting investors

from Brazil whereas the Gorositos and Diego s target Spanish-speaking investors from Latin America and Spain, mostly hailing from their native Argentina.

21.     At all relevant times to this lawsuit, Defendants maintained an office in the posh neighborhood of Puerto Madero in Buenos Aires, Argentina.  Most of the fraudsters worked out of this office, but they regularly traveled to South Florida in furtherance of the fraud.  Defendants also maintained an office located at 10451 NW 117th Avenue, Suite 125, Medley, FL 33179 (formerly located at 10598 NW South River Drive, Medley, FL 33179) where they keep some office staff to convey an air of legitimacy.  In order to perpetrate their fraud, Defendants enlisted the help of financial institutions operating within this judicial district, including Wells Fargo Bank, N.A. ("Wells Fargo") and Branch Banking and Trust Company ("BB&T Bank").

22.     Defendants opened bank accounts with Wells Fargo and BB&T Bank in order to receive their victims' funds and to divert those funds for their personal use instead of for the purposes of implementing the investment strategy pitched to Plaintiffs.  Defendants' conduct evidences a pattern of mail fraud, wire fraud, bank fraud, money laundering, and monetary transactions involving property derived from unlawful activity.

23.     The Defendants induced the Plaintiffs to invest in their fraudulent scheme through a series of misrepresentations that were made in meetings and teleconferences attended by Plaintiffs' representatives and some of the defendants.

24.     R4 has four (4) principals, Rubens and Hortencia Rabelo (husband and wife), and their two (2) daughters: Luana and Lorena Rabelo.   Luana is a childhood friend of Defendant Thalles Gomes.  Defendant Thalles Gomes abused his close friendship and relationship of trust with Luana to initially pitch the investment to the rest of the Rabelos.  The principals of E2 are Lorena Rabelo and her husband Petrus Paulo.

25.     In or about March 2016, Thalles approached Luana in São Paulo Brazil, about the investment opportunity and ask her to have her family invest.   Thalles misrepresented to Luana that his father had purchased him a truck that was already working and producing great returns on the purported principal invested.  In fact, upon information and belief, including the retention of private investigators, Thalles nor any company beneficially owned by him ever owned any truck in the State of Florida.

26.     Defendant Thalles arranged a meeting that was held on July 6, 2016, at the office of Defendant's fraudulent scheme located at 10451 NW 117th Avenue, Suite 115, Medley, Florida 33178.  The meeting was attended by Plaintiffs' representatives: Rubens and Luana Rabelo and Luana's husband, Dino Bandiera.  The meeting was also attended by Defendant Barbara and two (2) other women that appeared to be working for the fraudulent scheme as covers to give some air of legitimacy.  At this meeting, Barbara s purportedly show the truck that belonged to Thalles Gomes and misrepresented that principals running the purported business had forty (40) trucks of their own and two hundred and eighty (280) from third-party investors.  In fact, with the exception of Barbara, none of the other operators of the purported trucking business didn't even have legal authorization to work in the United States and regularly used their tourist visas to travel from Argentina to Florida in furtherance of the scheme.  At this meeting, Defendant Barbara showed documents to Plaintiffs' representatives showing a return of principal amount invested of 35% annually.  All of the representations made by Barbara Stratos were false and she knew they were false when she made them.  Plaintiffs know that all of these statements were false because since the filing of this action, Plaintiffs and their counsel have been approached by at least seven (7) other investors who were told similar stories and never received a single dollar in return, the trucks, or anything of value from Defendants' fraudulent scheme. Moreover, all the documents Barbara

showed during the meeting were false as none of the investors have gotten returns that get even close to the 35% per year promised return. As previously noted, Plaintiffs were approached by other victims who stated that they lost their entire investment and never received a single dollar in return. In addition, Plaintiffs' counsel was approached by an Argentine attorney representing about twenty (20) Argentine citizens that were defrauded by the same Defendants sued here and who were so enraged by Defendants' criminal acts that they paid their Argentine attorney to come to South Florida to press charges and try to get the U.S. Attorney's Office for the Southern District of Florida involved to hopefully charge Defendants for their criminal acts.

27.    Defendant Thalles \ arranged for an additional meeting that took place at the restaurant of the Fasano Hotel, in Punta del Este, Uruguay, and was held on October 31, 2016. The meeting was attended by Plaintiffs' representatives: Rubens, Hortencia, Luana and Lorena Rabelo as well as Dino Bandiera and Petrus Paulo. The meeting was also attended by Defendants Thalles and Eduardo. A picture of the lunch meeting showing all of the participants is attached hereto as **Exhibit C**. At this meeting, Eduardo and Thalles made a series of misrepresentations including: (i) that the logistic operations had a fleet of approximately 400 trucks and they had a goal of reaching a fleet of 1,000 trucks; (ii) that Eduardo Lopez had himself four (4) trucks; (iii) that Defendant Thalles had one truck; (iii) that each truck produces a return of 30% on the capital invested to put each truck to work; (iv) that the investment in the trucks was extremely secure, the logistics business was ran by serious business entities with many years of experience in the logistics market in the United States. During this meeting, Defendant Thalles and Eduardo showed Plaintiffs' representatives excel spreadsheets showing the purported returns and projected profit and loss statements, marketing materials, showing the website link www.americangb.com. All of the representations made were false and Defendants Thalles and Eduardo knew they were false

when they were made. All of the written materials presented to Plaintiffs' representatives were also false and fraudulent. Plaintiffs' multi-year investigation which includes the hiring of investigators in Brazil, Argentina, and the United States revealed that none of the companies associated with Defendants had any major logistics contracts, they did not employ directly or indirectly any mechanics, they did not put operational trucks to transport any goods, and none of the investors were paid a single dollar in return for their investments. In fact, Defendants used their ill-gotten gains to buy land and other assets in Southern Argentina.

28.     During the Punta del Este meeting, Defendants Thalles and Eduardo solicited that R4 purchase four (4) trucks at the price of $89,000 each for total investment of $356,000 and that E2 purchase one (1) truck at the price of $90,000. Defendants Thalles and Eduardo committed to organize the Florida limited liability companies R4 and E2 and to open R4's and E2's bank accounts. Notably, BB&T, which appears to be an active member of the RICO enterprise, agreed to open the bank accounts for R4 and E2 even though none of Plaintiffs' representatives visited the branch of the bank to open the bank accounts.

29.     In January 2017, Defendant Thalles travelled from Buenos Aires, Argentina, to São Paulo, Brazil, in furtherance of his efforts to induce the Plaintiffs to invest. Defendant Thalles met with Rubens, Hortencia and Luana Rabelo. At this meeting, Defendant Thalles made the repeated misrepresentations that he himself had invested by having his father buy him a truck that was producing great returns, that the investment was secure and with no risk, that the companies running the business had been in business for over ten (10) years, and many other misrepresentations of material facts. All of Defendant Thalles Gomes' representations were false and he knew they were false when he made them. In fact, Plaintiffs investigation revealed that none of the Defendants had been even in the U.S. for such amount of time, didn't have legal

authorization to work in the United States and were in fact violating their tourist visa terms and conditions by engaging in the fraudulent scheme, didn't have any logistics contracts to put the trucks to work, and all of the trucks purchased sat in a yard because they were inoperable and Defendants didn't even bother to register them.

30.    In February-March 2017, R4 and E2, induced by the fraudulent representations made by the Defendants, proceeded to make their investments (R4 in the amount of $356,000 and E2 in the amount of $90,000).

31.    Plaintiffs never received a single penny in return of their $446,000 investment. Plaintiffs became suspicious that they have been duped by Defendants.  As a result, Plaintiffs coordinated a Skype teleconference to be held on July 12, 2017, with Eduardo, Thalles, and Pablo. Plaintiffs' representatives Rubens and Luana Rabelo, Petrus Paulo, and Dino Bandiera decided to actually travel to Buenos Aires, Argentina and showed up unexpectedly the Defendants' office there instead of attending the meeting via Skype as originally setup.  This meeting lasted for about 3 hours, and during that meeting, Defendants Thalles, Pablo and Eduardo made additional misrepresentations to cover up their fraudulent scheme including: (i) the purported returns on the investments of the performance of Plaintiffs' trucks; (ii) the purported operational costs of Plaintiffs' trucks; (iii) the number of employees of Defendants' entities; (iv) operational costs of Defendants' structure;  Plaintiffs representatives secretly recorded the three (3) hour conversation in compliance with Argentine law.

32.    Plaintiffs would not have invested any funds but for the fraudulent misrepresentations of the Defendants.  All of the representations were false when they were made as revealed by Plaintiffs' multi-year investigation and Defendants knew that the representations

were false.  Defendants conspired with one another because they each receive a share of the proceeds of their crime.

**<u>CAUSES OF ACTION</u>**

**COUNT I – RICO (Violation of 18 U.S.C. § 1962(c))**
**(Against All Defendants)**

33.     Plaintiffs incorporates paragraphs 1 through 32 above by reference.

34.     Plaintiffs and each defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(a) and (c).

35.     Defendants and their co-conspirators comprised a group of persons associated together for the common purpose of carrying out the conspiracy described in this complaint.  This conspiracy principally involved the soliciting and misappropriation of Plaintiffs' funds.  Defendants and their co-conspirators thus constitute an association-in-fact enterprise under 18 U.S.C. §§ 1961(4) and 1962(a) and (c).

36.     During all relevant times, Defendants and their co-conspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth herein.  These acts constitute a violation of one or more of 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity).

37.     During their multi-year fraud, Defendants sent multiple e-mails to their victims, including Plaintiffs, to solicit their investments.  By using e-mails to solicit investors for their fraudulent scheme, and by transmitting false information in those emails, Defendants engaged in countless acts of wire fraud which will be further revealed through discovery.

38.     In addition, Defendants initiated many wire transfer of funds with the stolen money from the Plaintiffs and other victims of their fraud to divert the funds for their personal use.  The evidence for these multiple wire transfers will be revealed through discovery.

39.     The Defendants' scheme had significant continuity as it lasted for a period of at least 7 years.  Moreover, this was not a single episode of fraud, these two Plaintiffs each were defrauded, and several others as identified above were also defrauded.

40.     Throughout their multi-year scheme, Defendants made several wire transfers in the amount of $10,000 or in excess thereof, in violation of 18 U.S.C. § 1957 because the funds in question were the stolen from Plaintiffs and other victims through their numerous acts of wire fraud.

41.     Through their multi-year scheme, Defendants travelled from Argentina to United States on several occasions do distribute the money of their money-laundering activities and to promote, manage, establish, and carry on their fraudulent scheme and money laundering in violation of 18 U.S.C. § 1952.

42.     Defendants engaged in, and whose activities affect, interstate commerce.  At all relevant times, Defendants were employed by or associated with the enterprise described above.

43.     Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally diverting, laundering and converting hundreds of thousands of dollars belonging to Plaintiffs.

44.     Pursuant to and in furtherance of the illegal scheme, Defendants knowingly agreed to perform acts, and did perform multiple related acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity all of

which facilitated the activities and conduct of those operating and managing the enterprise in an illegal manner.

45.     The acts of wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

46.     Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

47.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs were injured in its business and property through the loss of US$446,000.00.

**WHEREFORE**, Plaintiffs requests a judgment against Defendants awarding treble damages of US$1,338,000.00, plus interest, costs and attorneys' fees, and for such further relief as the Court deems just and proper.

## COUNT II – RICO (Violation of 18 U.S.C. § 1962(d))
### (Against All Defendants)

48.     Plaintiffs incorporates paragraphs 1 through 32 above by reference.

49.     Plaintiffs and each defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(a) and (c).

50.     Defendants and their co-conspirators comprised a group of persons associated together for the common purpose of carrying out the conspiracy described in this complaint.  This conspiracy principally involved the soliciting and misappropriation of Plaintiffs' funds.  Defendants and their co-conspirators thus constitute an association-in-fact enterprise under 18 U.S.C. §§ 1961(4) and 1962(a) and (c).

51.     During all relevant times, Defendants and their co-conspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth herein.  These acts constitute a violation of one or more of 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity).

52.     Defendants engaged in, and whose activities affect, interstate commerce.  At all times relevant, Defendants were employed by or associated with the enterprise described above.

53.     Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally diverting, laundering and converting hundreds of thousands of dollars belonging to Plaintiffs.

54.     Pursuant to and in furtherance of the illegal scheme, Defendants knowingly agreed to perform acts, and did perform multiple related acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity all of which facilitated the activities and conduct of those operating and managing the enterprise in an illegal manner.

55.     The acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity, set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

56.     Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

15

57. As a direct and proximate result of Defendants racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs were injured in its business and property through the loss of more than US$38.7 million.

58. As set forth above, each of the Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

59. Specifically, each of the Defendants conspired to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally diverting, laundering and converting hundreds of thousands of dollars belonging to Plaintiffs.

60. Each Defendant knew that its predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above and to enrich itself.

61. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

62. As a direct and proximate result of Defendants' conspiracy with the members of the enterprise, the overt acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs were injured in its business and property through the loss of US$446,000.00.

**WHEREFORE**, Plaintiffs requests a judgment against Defendants awarding treble damages of US$1,338,000.00, plus interest, costs and attorneys' fees, and for such further relief as the Court deems just and proper.

## COUNT III – FLORIDA RICO (Violation of §772.103, Fla. Stat.)
## (Against All Defendants)

63.     Plaintiffs incorporates paragraphs 1 through 32 above by reference.

64.     For the reasons set forth above, Defendants have violated the Florida Civil Remedies for Criminal Practices Act, §772.103(1), (3)-(4), Fla. Stat., which is Florida's state law version of the RICO Act, and which tracks the RICO Act virtually verbatim.

65.     Specifically, as described in detailed above, Defendants and their co-conspirators have, since 2013, comprised a group of persons associated together for the common purpose of carrying out the conspiracy described in this complaint to defraud their victims, including Plaintiffs, by soliciting their funds based on false pretenses and by using those funds to fund their lifestyles and to further promote their fraudulent scheme to attract additional victims.   Each of the Defendants and their co-conspirators participated in this conspiratorial conduct through a pattern of racketeering activity including violations of one or more of 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity).

66.     As a direct and proximate result of Defendants' conspiracy with the members of the enterprise, the overt acts of mail, wire and bank fraud, money laundering and monetary transactions in property derived from specified unlawful activity taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs were injured in its business and property through the loss of US$446,000.00.

**WHEREFORE**, Plaintiffs requests a judgment against Defendants awarding treble damages of US$1,338,000.00, plus interest, costs and attorneys' fees, and for such further relief as the Court deems just and proper.

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.

## COUNT IV - FRAUD
### (Against Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito)

67.     Plaintiffs incorporates paragraphs 1 through 32 above by reference.

68.     Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito made numerous misrepresentations of fact as set forth in paragraphs 23-32.

69.     Plaintiffs reasonably and justifiably relied upon the representations of Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito in connection with their decision to invest $446,000.00.

70.     Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito representations to Plaintiffs were false and were known to be false by him when made because he had the specific intent and purpose to cause Plaintiffs to invest in their fraudulent logistics business so that he could misappropriate Plaintiffs' funds for his sole benefit to the detriment of Plaintiffs.

71.     Defendants Barbara Stratos, Thalles Gomes, Eduardo Lopez and Pablo Gorosito representations to Plaintiffs were made with the positive intent of deceiving Plaintiffs and/or were made without any intention of ever performing by using Plaintiff's funds to fund his lifestyle instead of carrying on the logistics business pitched to Plaintiffs.

72.     As a result of the above-described fraud, Plaintiffs have suffered and sustained damages in the amount of at least $446,000.00.

73.     Plaintiffs reserve the right to bring a claim for punitive damages upon a proper showing to the Court.

**WHEREFORE**, Plaintiffs request a judgment against Defendants Barbara Stratos, Eduardo Lopez, Thalles Gomes and Pablo Gorosito for an award of money damages, including pre and post judgment interest; and for such further relief as the Court deems just and proper.

18

## COUNT V - CONSPIRACY TO DEFRAUD
### (Against All Defendants)

74.     Plaintiffs incorporates paragraphs 1 through 32 above by reference.

75.     Each of the Defendants engaged in a civil conspiracy to defraud Plaintiffs.

76.     The fraudulent conspiracy included an agreement to commit several unlawful acts, including agreements to engage in wire and bank fraud, money laundering, and engaging in monetary transactions involving property derived from specified unlawful activity, primarily through the use of Wells Fargo and BB&T's bank accounts.  In addition, Defendants made several misrepresentations of fact knowingly and willfully to defraud the Plaintiffs as set out throughout this Amended Complaint.  Each Defendant conspired with one another and took overt acts in furtherance of the conspiracy by making false statements, acquiescing with the false statements made by others, and creating and displaying documentation containing false representations such as marketing materials and financial projections.

77.     Defendants engaged in numerous overt acts through wire and bank fraud, money laundering, and monetary transactions involving property derived from specified unlawful activity which allowed them to launder hundreds of thousands of dollars diverted from Plaintiffs.

78.     As a direct and proximate result of the conspiracy, Plaintiffs have been damaged.

79.     The wrongful acts of Defendants in this regard were done with malice and with the intent to defraud.

80.     Plaintiffs reserve the right to bring a claim for punitive damages upon a proper showing to the Court.

**WHEREFORE**, Plaintiffs request a judgment against Defendants for an award of money damages, including pre and post judgment interest; and for such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which a trial by jury is permitted by law.

Dated: March 3, 2022.           Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Road, Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone:     (305) 615-1434
Facsimile:      (305) 615-1435

By: /s/ *Rodrigo S. Da Silva*
    Rodrigo S. Da Silva, Esq.
    Florida Bar No. 0088600
    *Counsel for Plaintiffs, R4 Transportation and Logistics, LLC and E2 Logistics LLC*